UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| STEVEN C. MARTINEZ, | ) | 1:09cv02119 LJO DLB |
| | ) | |
| | ) | |
| | ) | FINDINGS AND RECOMMENDATIONS |
| Plaintiff, | ) | REGARDING DEFENDANTS' MOTION TO DISMISS |
| | ) | |
| v. | ) | |
| | ) | |
| DERRAL G. ADAMS, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

On February 3, 2010, Defendants Derral G. Adams, Edgar Clark, M.D., Jeffrey Neubarth, M.D., Cheryl Schutt, R.N., and Laura Schaper, R.N. ("Defendants") filed the present motion to dismiss the complaint of Plaintiff Steven C. Martinez ("Plaintiff" or "Martinez"). The motion was referred to this Court pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302. The matter was heard on June 25, 2010, before the Honorable Dennis L. Beck, United States Magistrate Judge. David A. Carrasco appeared on behalf of Defendants. Ken I. Karan appeared telephonically on behalf of Plaintiff.

**BACKGROUND**

Plaintiff filed this civil rights action on December 2, 2009.

On February 3, 2010, Defendants filed the instant motion to dismiss Plaintiff's claims as insufficiently plead and barred by failure to exhaust administrative remedies.

On May 8, 2010, Plaintiff filed his opposition. Defendants filed a reply on May 14, 2010.

1

**FACTUAL ALLEGATIONS IN THE COMPLAINT**

Plaintiff is incarcerated at California State Prison - Corcoran ("CSPC"). He is a quadriplegic and an insulin dependent diabetic. He generally alleges that he is a victim of abuse and negligence.

Defendant Derral G. Adams ("Warden Adams") is the CSPC warden. Defendant Edgar Clark, M.D. ("Dr. Clark"), is Plaintiff's primary care physician and the Chief Medical Health Officer/Health Care Manager at CSPC. Defendant Jeffrey Neubarth, M.D. ("Dr. Neubarth"), is Plaintiff's primary care physician at CSPC.

Defendant Cheryl Schutt, R.N. ("Nurse Schutt") is Director of Nursing at the Acute Care Hospital ("ACH") at CSPC. Defendant Laura Schaper, R.N. ("Nurse Schaper") is a supervising nurse at ACH.

**Individualized Allegations**

*Warden Adams*

Plaintiff alleges that Defendant Adams "received multiple written reports of medical neglect and abuse." When Warden Adams investigated, his policy was to make "misleading and false statements claiming that no neglect and abuse was taking place." His statements also were a policy to "cover up medical neglect and abuse" and his failure to hold persons accountable was "a policy of turning a blind eye to constitutional deprivations." Complaint ¶ 103.

*Dr. Neubarth*

On an unspecified date, Dr. Neubarth "did not act to protect Mr. Martinez's health and safety by failing to have the necessary training and skill to address Mr. Martinez's medical condition," was negligent and provided care below the standard. Complaint ¶ 88.

At an unspecified time, Dr. Neubarth "failed to provide a plan of care that addressed all of the complications facing Mr. Martinez, failed to consult with specialists to determine an appropriate care plan and to monitor Mr. Martinez's systems subject to complications due to his quadriplegia and mellitus diabetes, failed to act on recommendations from specialists, [and] failed to provide necessary adaptive devices to accommodate his disabilities." Complaint ¶ 88.

At unstated times, Dr. Neubarth "received numerous reports of medical neglect and abuse" and "hundreds of grievances filed by Plaintiff." Dr. Neubarth had a duty to review and investigate the grievances. Dr. Neubarth's policy was to make "misleading and false statements claiming that no neglect and abuse was taking place." Additionally, his statements were a policy to "cover up medical neglect and abuse" and his failure to hold persons accountable was "a policy of turning a blind eye to constitutional deprivations." Complaint ¶ 104.

*Dr. Clark*

On an unspecified date, Dr. Clark "disregarded Mr. Martinez's complaints about abdominal pain and breathing problems. Only when another doctor stepped in did Mr. Martinez receive treatment. Mr. Martinez had to be transported to an emergency room to treat the neglected conditions." Complaint ¶ 87.

At unstated times, Dr. Clark "received numerous reports of medical neglect and abuse" and "hundreds of grievances filed by Plaintiff." Dr. Clark had a duty to review and investigate the grievances. Dr. Clark's policy was to make "misleading and false statements claiming that no neglect and abuse was taking place." Additionally, his statements were a policy to "cover up medical neglect and abuse" and his failure to hold persons accountable was "a policy of turning a blind eye to constitutional deprivations." Complaint ¶ 104.

*Nurses Schutt and Schaper*

Nurses Schutt and Schaper "knew or should have known" that nurses they supervised were abusing, neglecting and failing to carry out Plaintiff's medical and nursing plan, and were "retaliating against Mr. Martinez when he exercised his rights to be free of unlawful punishment and abuse and neglect and when he complained." Nurses Schutt and Schaper "failed to properly train" their staff and breached their "duties to Mr. Martinez by failing to take action to prevent or intervene against or report abuse and neglect by nurses." Nurses Schutt and Schaper "implemented or ratified policies that allowed the deprivations, or . . . turned a blind eye" to them. They were "deliberately indifferent and negligent" in their "failure to adequately supervise and train" their subordinates. Complaint ¶¶ 89-90.

At unstated times, Nurses Schutt and Schaper "received numerous reports of medical neglect and abuse" and "hundreds of grievances filed by Plaintiff." Nurses Schutt and Schaper had a duty to review and investigate the grievances. Their policy was to make "misleading and false statements claiming that no neglect and abuse was taking place." Additionally, their statements were a policy to "cover up medical neglect and abuse" and their failure to hold persons accountable was "a policy of turning a blind eye to constitutional deprivations." Complaint ¶ 104.

Based on these allegations and other general allegations as to all "Defendants," Plaintiff brings causes of action for (1) violation of his Eighth Amendment "rights to be free from cruel and unusual punishment in the form of Defendants' deliberate indifference to Plaintiff's personal health and safety" under 42 U.S.C. § 1983; (2) abuse of dependent adult under California Welfare & Institutions Code §§ 15600 *et seq.*; (3) medical negligence against unidentified health care providers; (4) retaliation "to discourage or prevent Plaintiff from taking part in the lawful exercise of his rights or benefitting therefrom;" and (5) intentional infliction of emotional distress.

Plaintiff seeks damages, medical expenses, punitive damages and attorney fees.

I.      **Failure to Exhaust Administrative Remedies**

   A.      **Legal Standard**

Defendants argue that Plaintiff failed to exhaust his claims in compliance with 42 U.S.C. § 1997e(a) and state law, subjecting the claims to dismissal. Section 1997e(a) of the Prison Litigation Reform Act of 1995 provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Prisoners are required to exhaust the available administrative remedies prior to filing suit. Jones v. Bock, 549 U.S. 199, 211, 127 S.Ct. 910, 918-19 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741, 121 S.Ct. 1819 (2001), and the exhaustion requirement applies to all prisoner suits

4

relating to prison life, Porter v. Nussle, 435 U.S. 516, 532, 122 S.Ct. 983 (2002).

The California Department of Corrections and Rehabilitation has an administrative grievance system for prisoner complaints. Cal. Code Regs., tit. 15 § 3084.1 (West 2010). The process is initiated by submitting a CDCR Form 602. Id. at § 3084.2(a). Four levels of appeal are involved, including the informal level, first formal level, second formal level, and third formal level, also known as the "Director's Level." Id. at § 3084.5. Appeals must be submitted within fifteen working days of the event being appealed, and the process is initiated by submission of the appeal to the informal level, or in some circumstances, the first formal level. Id. at §§ 3084.5, 3084.6(c). In order to satisfy section 1997e(a), California state prisoners are required to use this process to exhaust their claims prior to filing suit. Woodford v. Ngo, 548 U.S. 81, 85-86, 126 S.Ct. 2378 (2006); McKinney, 311 F.3d at 1199-1201.

Section 1997e(a) does not impose a pleading requirement, but rather, is an affirmative defense under which defendants have the burden of raising and proving the absence of exhaustion. Jones, 127 S.Ct. at 921; Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). The failure to exhaust nonjudicial administrative remedies that are not jurisdictional is subject to an unenumerated Rule 12(b) motion, rather than a summary judgment motion. Wyatt, 315 F.3d at 1119 (citing Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368 (9th Cir. 1998) (per curium)). In deciding a motion to dismiss for failure to exhaust administrative remedies, the Court may look beyond the pleadings and decide disputed issues of fact. Wyatt, 315 F.3d at 1119-20. If the Court concludes that the prisoner has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. Id.

Under California law, the "exhaustion of administrative remedies" rule "is that where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act." Abelleira v. District Court of Appeal, Third Dist., 17 Cal.2d 280, 292, 109 P.2d 942 (1941). "If an administrative remedy is provided by statute, a litigant must ordinarily show that he has invoked and exhausted the remedy before resorting to the judicial process." Myers v. Mobil Oil Corp., 172 Cal.App.3d 1059, 1064, 218 Cal.Rptr. 630 (1985). "Exhaustion of the administrative remedy is a jurisdictional prerequisite to

resort to the courts." Myers, 172 Cal.App.3d at 1064, 218 Cal.Rptr. 630. "The requirement that administrative remedies be exhausted 'applies to grievances lodged by prisoners.'" In re Dexter, 25 Cal.3d 921, 925, 160 Cal.Rptr. 118 (1978). "Under state law, inmates are required to exhaust administrative remedies, even when seeking money damages unavailable in the administrative process." Wright v. State, 122 Cal.App.4th 659, 666, 668, 19 Cal.Rptr.3d 92 (2004) (the PLRA exhaustion requirement "parallels the exhaustion requirement under state law").

Defendants contend that the PLRA and state exhaustion requirements serve "similar interests" and, under principles of comity, the Court should apply state law exhaustion requirements. Defendants argue that none of the claims in this action were pursued through the "third level of review" prior to the filing of this action on December 12, 2010. Defendants indicate that Plaintiff has pursued 48 appeals through the third level of review, but none of them give notice of any claim against any Defendant that he or she violated Plaintiff's civil rights, abused Plaintiff, provided him with substandard medical care, retaliated against him or intentionally inflicted emotional distress on Plaintiff.

Plaintiff does not argue that he exhausted his administrative remedies to the third level of review. He has not disputed that none of the 48 exhausted appeals concern the instant claims against Defendants. Instead, Plaintiff asserts that he attempted to exhaust four appeals regarding his claims, but that CDCR improperly screened them. He identifies the appeals as: (1) COR-09-09-10886; (2) IA-09-2009-11764; (3) IA-09-2009-11918; (4) IA-09-2009-11950. Plaintiff argues that Defendants should be estopped from asserting the defense of non-exhaustion because the administrative process was not available to him. Alternatively, Plaintiff requests that the Court find that "by submitting valid appeals that were not processed through no fault of Plaintiff, he has, as a matter of law, exhausted all administrative remedies." Opposition, p. 14.

Although Plaintiff contends that his grievances were improperly screened, there is no indication that the administrative process was unavailable to him. The regulations relevant to CDCR's administrative process permit rejection, or screening out, of an inmate appeal where "[t]he appeal is incomplete or necessary supporting documents are not attached" or where "[t]ime limits for submitting the appeal are exceeded and the appellant had the opportunity to file within

the prescribed time constraints." Cal. Code of Regs. tit. 15, § 3084.3(c)(5), (6).  In each of the four grievances identified by Plaintiff, the appeals coordinator screened out the appeal and sought additional information from Plaintiff.

For example, in appeal 09-09-10886, the appeals coordinator screened out the appeal, informing Plaintiff that he should file a separate appeal as to each person and noting that it was unclear what the medical issues was.  Exhibit 2 to Declaration of Ken Karan.

On April 19, 2009, Plaintiff's counsel wrote to the appeals coordinator to complain about the appeal being screened.  Counsel demanded that the coordinator "process the appeal as you are required to do.  I consider this appeal to have been exhausted at the First Level and the time to respond tolled by the unmeritorious decision to delay the process on your part."  Exhibit 3 to Declaration of Ken Karan..  Two months later, on May 11, 2009, Plaintiff's counsel submitted a "supplement" to the grievance.  Exhibit 4 to Declaration of Ken Karan.  The supplement was untimely.  Cal. Code of Regs. tit. 15, § 3084.6(c).

In appeal IA-09-2009-11764, the appeals coordinator screened out the appeal in part because it did not provide any dates or names of staff.  Exhibit 6 to Declaration of Ken Karan. Again, Plaintiff's counsel objected to the reasons for the screening.  Exhibit 7 to Declaration of Ken Karan.  No supplemental information was provided by Plaintiff regarding the appeal.

In appeal IA-09-2009-11918, the appeals coordinator requested the date that each incident occurred.  Exhibit 9 to Declaration of Ken Karan.  On June 19, 2009, Plaintiff's counsel complained about the screening out process, but did not provide supplemental information. Exhibit 10 to Declaration of Ken Karan.

In appeal IA-09-2009-11950, the appeals coordinator screened out the appeal, noting numerous deficiencies and requesting specific dates and specific factual information.  Exhibit 12 to Declaration of Ken Karan.  Again, Plaintiff's counsel wrote to the appeals coordinator about the attempt to screen out the appeal.  Exhibit 13 to Declaration of Ken Karan.

On June 19, 2009, Jennifer Jones, an appeals coordinator, responded to Plaintiff's counsel and indicated that the screen out asked for information necessary to take appropriate responsive measures.  She also stated that the "screen out stands" and if Plaintiff wished to correct the

7

deficiencies, then the appeal would be processed. Exhibit 14 to Declaration of Ken Karan.

Instead of supplementing the grievance, Plaintiff's counsel wrote letters to Warden Adams and Nola Grannis, CDCR Chief of Inmate Appeals. Counsel complained that Plaintiff's grievances were being screened inappropriately. Exhibits 15-25 to Declaration of Ken Karan.

There is no indication that Plaintiff's appeals could not be "screened out," particularly where Plaintiff failed to provide names or relevant dates to ascertain the timeliness of complaints. Cal. Code of Regs. tit. 15, § 3084.3(c)(5), (6). Plaintiff provides no reason that he could not pursue his appeals after they were screened out simply by providing the requested information, such as staff names and relevant dates. Thus, the Court finds that Plaintiff has not exhausted his administrative remedies and RECOMMENDS that the complaint be dismissed.

## II.      Failure to State a Claim

Although Plaintiff has failed to exhaust his administrative remedies, the Court reviews Defendants' alternative basis for dismissal of Plaintiff's federal claims. As discussed below, the Court also finds that Plaintiff has failed to state a section 1983 or First Amendment retaliation claim against Defendants.

### A.      Legal Standard

Defendants argue that Plaintiff fails to allege sufficient facts to state either a section 1983 claim or a First Amendment retaliation claim. "The focus of any Rule 12(b)(6) dismissal . . . is the complaint," Schneider v. California Dept. of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998), which must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)); Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Iqbal, 129 S.Ct. at 1949-50; Moss, 572 F.3d at 969.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Iqbal at 1949 (citing

Twombly at 555), and courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

### B. Section 1983 - Eighth Amendment

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). The two part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)).

Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. (citing McGuckin at 1060 (internal quotations omitted)).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

*Dr. Neubarth*

In the complaint, Plaintiff alleges that Dr. Neubarth failed to provide an appropriate plan of care, failed to consult with specialists, failed to monitor his condition and failed to provide

9

adaptive devices. Complaint ¶ 88. Plaintiff complains that Dr. Neubarth was negligent. Complaint ¶ 88. As Defendants note, mere "indifference," "negligence," or "medical malpractice" will not support a claim of deliberate indifference under the Eighth Amendment. Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir.1980) (Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005) (mere negligence is not deliberate indifference). Plaintiff has failed to state an Eighth Amendment claim against Dr. Neubarth.

*Dr. Clark*

Plaintiff alleges that Dr. Clark disregarded Plaintiff's complaints about abdominal pain and breathing problems on an unspecified date. Complaint ¶ 87. Defendants argue that this allegation "is consistent with Dr. Clark merely misdiagnosing Plaintiff's condition," which does not give rise to a claim for deliberate indifference. See, e.g., Sealock v. Colorado, 218 F.3d 1205, 1211 (10th Cir. 2000) (declining to grant summary judgment in instance of misdiagnosis). Further, "isolated occurrences of neglect" do not rise to the level of an Eighth Amendment violation. O'Loughlin v. Doe, 920 F.2d 614, 617 (9th Cir. 1990); Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). As such, Plaintiff has failed to state a claim of deliberate indifference against Dr. Clark.

*Nurses Schutt and Schaper*

Plaintiff alleges that Nurses Schutt and Schaper "knew or should have known that nurses under [their] supervision were subjecting Plaintiff to abuse and neglect . . . ." Complaint ¶¶ 89, 90.

Under section 1983, there is no *respondeat superior* liability, and each defendant is only liable for his or her own misconduct. Iqbal, 129 S.Ct. at 1948-49. A supervisor may be held liable for the constitutional violations of his or her subordinates only if he or she "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); also Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark County School Board of Trustees, 479 F.3d 1175, 1182 (9th Cir.

2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).

Here, Plaintiff does not allege any facts indicating that Nurses Schutt and Schaper participated in or directed any specific violations on any specific dates.  Although Plaintiff alleges that Nurse Sandra Simon and Nurse Lisa Reeves engaged in violations, he provides only conclusory allegations that "Defendant supervisors" had "full knowledge" of the violations and "did nothing to stop or correct" them.  Complaint ¶¶ 91, 92.  Plaintiff's allegations are devoid of sufficient factual matter to state a claim against Nurses Schutt and Schaper for supervisor liability.

*Warden Adams*

Plaintiff alleges that Warden Adams received reports of medical neglect and abuse.  The complaint accuses Warden Adams of making "misleading and false statements claiming that no neglect and abuse was taking place" to "cover up medical neglect and abuse."  The complaint also asserts that Warden Adams' failure to hold persons accountable was "a policy of turning a blind eye to constitutional deprivations."

Plaintiff set forth virtually identical allegations against Warden Adams in Martinez v. Adams, 1:09cv0899 LJO DLB.  In that instance, the Court dismissed the section 1983 claim against Warden Adams because of Plaintiff's failure to sufficiently plead factual allegations to state a claim.  Plaintiff fares no better with his allegations in this action.

The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which the complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Thus, the requisite causal connection can be established not only by some kind of direct personal participation, but also by setting in motion a series of acts by another which the actor knows or reasonably should know would cause others to inflict the constitutional injury.  Id. This standard of causation "...closely resembles the standard 'foreseeability' formulation of proximate cause."  Arnold v. International Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981).

11

Here, the complaint does not allege facts of Warden Adams' direct participation in any alleged neglect or abuse of Plaintiff. The complaint also fails to articulate a "policy" that Warden Adams implemented to deprive Mr. Martinez' constitutional rights. The Court recognizes that Plaintiff has alleged a "history of Defendants' treatment of Plaintiff demonstrates a pattern and practice of violating Plaintiff's rights and subjecting him to the risk of harm to his health and safety. The pattern and practice alleged is Defendants' policy." Complaint ¶ 94. However, this is a conclusory allegation lacking sufficient factual support to state a section 1983 claim. To the extent that Plaintiff makes the same conclusory allegations concerning Dr. Neubarth, Dr. Clark and Nurses Schutt and Schaper, his complaint does not state a claim.

### C.       Retaliation

Defendants argue that Plaintiff fails to allege facts showing that any Defendant participated in the alleged retaliatory conduct. Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

Plaintiff asserts that Defendants "retaliated against [him] through coercion, threats of punishment and bodily harm, actual punishment, denial of rights or privileges, denial of medical and nursing care, and other activities," the retaliation "did not advance legitimate penological goals" and as result he "suffered a chilling effect on the free exercise of his rights to free speech. Complaint ¶¶ 133-36. Plaintiff essentially alleges the elements of a retaliation claim without sufficient factual matter to state a claim that is plausible on its face. Iqbal, 129 S.Ct at 1949 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice,").

1  Accordingly, the Court finds that Plaintiff fails to allege sufficient facts to state either a
2 section 1983 claim or a First Amendment retaliation claim against Defendants.  Plaintiff requests
3 that he be provided leave to amend, but he has provided only generalities to support his claims
4 and he has proffered no additional facts to suggest that he can cure the defects.

### Recommendation

6  Based on the above, the Court RECOMMENDS that Plaintiff's complaint be
7 DISMISSED.

8  This Findings and Recommendation is submitted to the Honorable Lawrence J. O'Neill,
9 United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and
10 Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of
11 California.  Within fourteen (14) days after being served with a copy, any party may file written
12 objections with the court and serve a copy on all parties.  Such a document should be captioned
13 "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections
14 shall be served and filed within fourteen (14) days after service of the objections.  The Court will
15 then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are
16 advised that failure to file objections within the specified time may waive the right to appeal the
17 District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

19  IT IS SO ORDERED.

20  Dated:   **June 28, 2010**             **/s/ Dennis L. Beck**
                                          UNITED STATES MAGISTRATE JUDGE